This is a case about the meaning of an ambiguously drafted promissory note given by defendant Robert Mairs, both individually and in his capacity as president of defendant PrimeCare Services, Inc. (PrimeCare, now known as RQ Medical, Inc., the other defendant in this case), to the plaintiff, Paul H. Paisner, in connection with the sale by Paisner to PrimeCare of H. Eric Richards, Inc. (company). By the terms of the note, the principal loaned by Paisner was $329,739. The note indicates that the interest rate was three per cent per annum, and that the interest and principal were payable by sixty consecutive monthly payments each in the amount of $6,000, for a cumulative amount over the sixty repayment months of approximately $355,000.[3] The terms of the note were to be affected by the annual gross profit, as defined within the note, of the company during the one-year period following the "closing date," something not further defined within the note, but that the parties apparently agree is the date on which the note was signed, September 3, 2008. Paisner sued the defendants on November 27, 2012, for payment of the unpaid balance on the note, including certain late fees and the interest thereon, the details of which are not essential to the resolution of this appeal. The defendants responded by arguing that they were entitled to an adjustment based upon the provisions of the promissory note relating to adjustment of the both the monthly payments and the principal amount. After a bench trial in the Superior Court, the trial judge agreed with Paisner, and judgment entered accordingly. The defendants now appeal. Our review of legal questions is de novo, but we will not disturb factual findings by the trial judge unless they are shown to be clearly erroneous. See USM Corp. v. Arthur D. Little Sys., 28 Mass. App. Ct. 108, 116-117 (1989).
The provisions relating to adjustment are relatively brief. A section entitled "Adjustment to Note payments" provides: "(a) The first year's payments shall total $72,000.00 or $6,000.00 per month for 12 consecutive months as described above. Thirty (30) days after the twelfth month from the Closing Date, Gross Profit shall be determined as hereinafter defined."
The second sentence of subparagraph (a) is written in the passive voice. It does not state who "shall" determine gross profit. Of course, the defendants, as purchasers of the company, would be the only party with the records that would be necessary to determined gross profit, but again, the provision does not state who is required to make the determination.
Gross profit is defined in the promissory note as "Gross Revenues of the Company, reduced by cost of goods sold." Gross revenues are defined as "all invoiced sales by the Company on supplies delivered and equipment invoiced prior to the end of each month on an accrual accounting basis filed in timely fashion and in the exercise of good faith."
The adjustment provision uses $316,000 gross profit as a bench mark. The next paragraph of the "Adjustment to Note Payments" section says:
"(b) In the even [sic ] the Gross Profit for the first year is determined as described above, to be more or less than $316,000.00, then and in that event, there shall be a pro-rata adjustment in the monthly payments, but in no event less than $60,000.00 per year, or more than $84,000.00 per year. There shall be a similar adjustment in the principal balance of the Note and a new amortization schedule will be agreed upon. Thereafter, monthly payments shall continue at the rate of the reduced or increased annual amount as so determined in this paragraph in consecutive monthly installment payments in the reduced or increased pro rata amount. Reimbursement by Seller to Purchaser for any overpayments by Purchaser during the first year's payments shall be made by Purchaser, further reducing the next five (5) consecutive monthly installment payments due Seller under this Agreement by such an amount as would reimburse Purchaser in full for such overpayments, if any. Underpayment by Purchaser to Seller during the first year will be similarly reimbursed by Purchaser to Seller."
Gross profits were not determined, by either party, thirty days after the twelfth month from the closing date (what we will call the "calculation date") as required by the note. The defendants continued to pay Paisner $6,000 per month for the next thirty-seven months until January 5, 2012, and made one payment of $24,000 on February 16, 2012.[4] (Paisner testified at trial that the $24,000 payment was for January, February, March, and April of 2012.) Mairs also made two $5,000 payments, in September and November of 2012. Having received no payments in the interim, and expecting none since PrimeCare had in February of 2012 sold all of its and the company's assets to another entity, Paisner sued the defendants to recover money owed under the promissory note. At trial, Paisner testified, and the defendants do not dispute, that at no time during the term of the note did the defendants assert that gross profit during the first year had been below $316,000, and that they were therefore entitled an adjustment of both the monthly payments and principal amount.
Paisner argues that as soon as the defendants failed to determine the gross profit on the calculation date, and failed to notify Paisner of that determination at that time, they waived their right to an adjustment. That is, Paisner insists that in order to obtain any adjustment, the defendants were required to act by the calculation date.
We will assume, without deciding, that this is not correct. The amount of a promissory note and the terms of repayment are the most important terms of any promissory note. This note was designed to protect both parties in the event the value of the company that was sold to the defendants was more or less than Paisner anticipated, as demonstrated by its profitability during the first year following the sale. We will assume that it is not reasonable to read this commercial contract so that a party's protection with respect to a reduction in the amount of the note can be waived merely by failure to meet the calculation date deadline.
Even assuming that the defendants could at some point subsequently have sought a downward adjustment, however, the judgment must be affirmed. The defendants' claim is that they are entitled to an adjustment retroactively, such that, although they continued to pay $6,000 a month, and did not provide notice to Paisner that they were seeking a reduction due to the size of the gross profits in the year following the closing date, the court should treat them as having been entitled to reduced payments, and thus to a reduced principal balance during the sixty-month period beginning with the first payment. They say they are entitled to credit for overpayments made during months long past.
This assertion cannot be squared with the provisions of the promissory note. In particular, subparagraph (b) quoted above provides a specific mechanism for reimbursement of overpayments made during the first year that might be revealed by the required gross profit calculation. That mechanism is the further reduction of payments to be made during the five months immediately subsequent to the calculation date. Given the specific term that describes how any first-year overpayments are to be reimbursed, we are not free to alter the terms of the contract to say that the defendants may be reimbursed now for such overpayments. With the time for reimbursement past, the defendants' claim that they overpaid during that first year is waived.
Further, we think the inclusion of that mechanism, though it addresses only the first year's payments, implies that reductions in monthly payments due and thus in the principal amount are, under the note, to be forward-looking only from the date of notification by the defendants to Paisner (or in the case of an increase notification by Paisner to the defendants) that such reductions were required under the provision for adjustments. This reading is supported by the use of the word "thereafter" in the third sentence in subparagraph (b), which indicates that after a new amortization schedule was agreed upon -- which never happened here, and which could not happen until after the gross profit was actually determined -- monthly payments would continue at the reduced rate. The claim for any reductions prior to the date on which the defendants notified Paisner that they believed they were entitled to an adjustment therefore are waived. Although there is a provision in the promissory note specifying that failure to exercise powers or rights shall not be treated as a waiver, its protection is explicitly limited to Paisner. This is not a protection that the note provides to the defendants.
The complaint in this case was filed on November 27, 2012; the answer was received by the trial court on February 1, 2013. The sixtieth payment was due on September 3, 2013. In their answer, the defendants did not assert a right to an adjustment to the note or provide Paisner with a determination of gross profits as defined in the note. Indeed, there is no evidence in the record that the defendants ever notified Paisner at any time during the sixty-month period during which payments were due that they believed they were entitled to a reduction, or that they provided him during that time with a determination of gross profits; Paisner testified that "there [was no] adjustment proposed to the promissory note at any time during the term of the note."[5] Consequently, the defendants have waived their right to a reduction in those monthly payments and to the "similar" reduction in the principal amount of the note described therein.
Judgment affirmed.

Paisner understood that the sixtieth payment would be approximately $1,400.

The first payment was made on January 12, 2009.

Although the judge did not make such a finding, she did find that there had been no agreement to make a pro rata adjustment, which is consistent with Paisner's testimony that no adjustment was requested.